# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **VIVINT, INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**ALERT HOLDINGS GROUP, INC.** dba **ALERT ALARM HAWAII**, a Hawaii corporation, and **JOHN DOES 1-10**,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>Case No. 2:19-cv-215<br><br>Judge Clark Waddoups |

Before the court is the Motion to Dismiss (ECF No. 6) by Defendant Alert Holdings Group, Inc. dba Alert Alarm ("Alert"). The motion has been fully briefed, and the court heard argument on the same on October 23, 2019. Having reviewed the pleadings and materials submitted and considered the arguments of counsel, the court **DENIES** Alert's motion.

## BACKGROUND

Vivint, Inc. ("Vivint") and Alert both provide home security services in the state of Hawaii. While Alert's business is isolated to Hawaii, Vivint operates in a number of states and is headquarter, and has its principal place of business, in Utah. (ECF No. 2, at ¶¶ 1–2). At some point in 2017, Alert allegedly reached out to Kai Goldstein, who was a former employee of Alert but was then working for Vivint at its headquarters in Utah, and offered to "make it worth [his] while" if he would access, and turn over to Alert, information on Vivint's customers in Hawaii. (ECF No. 2, at ¶¶12–19; ECF No. 16, at 2–4). Alert allegedly used this information throughout 2017 and 2018 in order to target and solicit Vivint customers in Hawaii. (ECF No. 2, at ¶¶12–19).

On April 1, 2019, Vivint filed a complaint against Alert, asserting causes of action against it for Unfair Competition, Misappropriation of Trade Secrets, Tortious Interference with Contracts, Tortious Interference with Prospective Business Relations, and Violations of the Federal Trade Secrets Act. (ECF No. 2, at ¶¶26–46). Vivint's complaint also seeks to enjoin Alert "from making false and misleading statements, engaging in illegal contracting practices, tortuously interfering with Vivint's contractual and prospective relationships, and misappropriating Vivint's trade secrets." (ECF No. 2, at ¶¶47–52).

Alert moves to dismiss Vivint's complaint under Rule 12(b)(2) of the Federal Rule of Civil Procedure on the basis that it is not subject to personal jurisdiction of the court and under Rule 12(b)(3) because this court is not the proper venue in which to hear Plaintiff's claims. In the alternative, Alert requests the court to transfer venue to the District of Hawaii. Each of Alert's requests will be discussed in turn.

## ANALYSIS

### I. The court has personal jurisdiction over Alert.

When jurisdiction is contested, the plaintiff has the burden of proving that proper jurisdiction exists. *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). Plaintiff need only make a prima facie showing of personal jurisdiction at this preliminary stage of litigation. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a plaintiff has made such a showing, the court accepts the allegations in the complaint as true and resolves all factual disputes in the plaintiff's favor.

*See Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).

To show that personal jurisdiction exists over a defendant, a plaintiff must establish first, that jurisdiction is authorized under Utah law and second, that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *See Far West Capital*, 46 F.3d at 1074. The Tenth Circuit has recognized that the "jurisdictional inquiry in Utah diversity cases is reduced to a single question: did the defendants have sufficient 'minimum contacts' with the state of Utah to establish personal jurisdiction over them?" *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009) (citation omitted).

      A.    <u>Alert has minimum contacts with the State of Utah.</u>

A defendant is held to have minimum contacts with a forum where he "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks and citations omitted). However, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014) (citing *Burger King Corp.*, 471 U.S. at 478). While a defendant's contacts with the forum State "may be intertwined with his transactions or interactions with a plaintiff," their relationship with the plaintiff, standing alone, "is an insufficient basis for jurisdiction." *Id.* at 286. In order to authorize jurisdiction, a defendant's conduct in a state "must have a broader effect on the forum itself—something *beyond* the effect felt by the plaintiff alone." *Younique, L.L.C. v. Youssef*, No. 2:15-cv-783, 2016 WL 6998659, at *7 (D. Utah Nov. 30, 2016) (emphasis in original).

Alert's contacts with Utah are minimal. It is a Hawaii company with its principal place of business in Hawaii that only provides services in Hawaii, and it only used the client

information that it obtained from Vivint in Hawaii. Thus, as Vivint succinctly states in its opposition to Alert's motion to dismiss, "Alert's Motion to Dismiss presents a simple issue: Can a defendant who steals property from a company located in Utah to the harm and detriment of that company avoid having to answer for that theft in a Utah court by utilizing the stolen property outside of Utah?" (ECF No. 16 at 1). Tenth Circuit precedent establishes that it cannot.

"The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quotations and citations omitted). In a tort case, the first requirement may be established "when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state." *Id.* at 907 (emphasis added) (citing *Calder v. Jones*, 465 U.S. 783, 790–91 (1984)). This requires that three elements be met: "(a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.* (notations, quotations, and citation omitted).

Vivint's complaint alleges that Alert committed five torts: 1) unfair competition; 2) misappropriation of trade secrets under Hawaii law; 3) misappropriation of trade secrets under Federal law; 4) tortious interference with contracts; and 5) tortious interference with prospective business relations. The alleged facts that underlay these claims are that Alert contacted Mr. Goldstein, a Utah-based employee of Vivint, and enticed him to access Vivint's Utah database of Hawaii customers and send that information to Alert in Hawaii, and that Alert then used that improperly obtained information to solicit Vivint's customers in Hawaii.

Because the each of these alleged actions was intentional, each satisfies the first element

4

of the "purposeful direction" test. The Tenth Circuit has "taken a somewhat more restrictive approach" as to the second element of the test, requiring "that the forum state itself must be the 'focal point of the tort.'" *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1075, n. 9 (10th Cir. 2008) (citations omitted). Alert argues that its alleged conduct "took place in Hawaii," and that Hawaii, not Utah, was therefore the focal point of its torts. While it may be arguable that Alert's torts of unfair competition, tortious interference with contracts, and tortious interference with prospective business relations occurred strictly in Hawaii, Alert cannot avoid the Utah-centric nature of its alleged misappropriation of trade secrets.

Both Federal law and Hawaii's Uniform Trade Secrets Act define "misappropriation" as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "[d]isclosure or use of a trade secret of another without express or implied consent by a person . . . ." *See* 18 USC § 1831; HRS § 482B-1. Because the trade secrets here were stored on a Utah-based server and accessed from Vivint's Utah-based location by Mr. Goldstein, a Utah-based employee, their acquisition clearly occurred in Utah. While Alert protests that each of these actions were strictly those of Mr. Goldstein, that argument overlooks Alert's alleged role in those actions. Alert allegedly "reached out" to Mr. Goldstein to initiate a conversation about obtaining the Hawaii customer lists from Vivint, and Mr. Goldstein only acquired the lists as a result of Alert's request and enticement. (ECF No. 16-1 at ¶¶ 5–8). Accepting Vivint's allegations as true, Alert's hands are not clean as to the acquisition of Vivint's information, and it should not be permitted to avoid personal jurisdiction in Utah because it remained in Hawaii while its agent in Utah performed its dirty work. *See Ivanti, Inc. v. Shea*, 2018 WL 1033205, at *5 (D. Utah Feb. 21, 2018) (indicating that the defendant's "frequent" use of "contacts in Utah" to aide him in acquiring trade secrets was a

factor in finding that the second requirement of the "purposeful direction" test was satisfied).

The final requirement of the "purposeful direction" test is whether Alert knew that "the brunt of the injury would be felt" in Utah. Alert argues that the brunt of the injury occurred in Hawaii, as that was where it allegedly used Vivint's customer lists to solicit customers. But harm to a business is not necessarily centered at the place where injury is inflicted; it instead permeates to, and is most strongly felt at, the location where a business is based. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077 (10th Cir. 2008) (finding that "plaintiffs have satisfied their burden of establishing [on a motion to dismiss] that defendants knew plaintiffs' business . . . [was] based in Colorado, and therefore knew the effects of [their wrongful acts] would be felt there"); *see also Ivanti, Inc.*, 2018 WL 1033205, at *5 (recognizing that although the defendant used misappropriated information to solicit customers in Asia, "brunt of the injury from the misappropriation of trade secrets is felt primarily in Utah" and that given defendant's close relationship with the plaintiff's "headquarters in Utah," he "must have known the harm of the alleged appropriation would be felt in Utah"). Here, the record alleges that Alert targeted and reached out to Mr. Goldstein in Utah because he worked for Vivint. Alert therefore knew that the effects of its misappropriation would be primarily felt in Vivint's home of Utah, not just Hawaii.

Having found that all three requirements of the "purposeful direction" test are satisfied, the court now turns to the "arising out of" requirement. *See Old Republic Ins. Co.*, 877 F.3d at 908–09. Under this requirement, the court must determine if there exists "an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Id.* (quoting *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S.Ct. 1773, 1781 (2017)). For the reasons discussed above under the third requirement of the

6

"purposeful direction" test, such an affiliation exists here. Alert allegedly reached out to a Vivint employee in Utah in order to entice him to steal Vivint's customer lists from its Utah server so that Alert could use the same to steal away Vivint customers, to the harm of Vivint's Utah-based business.

Vivint has pled sufficient facts to satisfy both the "purposeful direction" test and the "arising out of" requirement and has therefore established that Alert had sufficient minimum contacts with the state of Utah. Nonetheless, Alert argues that jurisdiction cannot exist in Utah because Vivint is "the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014). However, Alert overlooks *Walden's* recognition that "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* Again, Alert's argument ignores the actions it is alleged to have taken directed at Utah—that it attacked a Utah-based company by targeting and reaching out to one of its employees in order to obtain stolen information that it planned to use to solicit away customers, to the harm of that Utah company's profits. Alert is not before this court merely because Vivint is a Utah company; it is here because it is accused of intentionally attacking Vivint in Utah.

      B.    <u>Exercising personal jurisdiction over Alert does not offend notions of fair play and substantial justice.</u>

"Even if a plaintiff has met its burden of establishing minimum contacts, '[w]e must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.'" *Old Republic Ins. Co.*, 877 F.3d at 908–09 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) (citations omitted)). Such inquiry shifts the burden to Alert "'to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable,'" *id.* (citation omitted), and requires that the following

factors be considered: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005)).

Alert argues that the court's exercise of personal jurisdiction over it would violate traditional notions of fair play and substantial justice because: 1) forcing Alert to litigate in Utah would create an unfair and unjust burden; 2) it had no reason to expect or foresee litigation in Utah; 3) Vivint could obtain the relief it seeks in Hawaii; and 4) neither the federal judiciary nor Utah's interests in the matter will be impeded if the case is litigated in Hawaii. Alert's third and fourth (to the extent it relates to the federal judiciary's interest) arguments essentially show neutrality between litigating in Utah and Hawaii and therefore fail "to present a compelling case that . . . would render jurisdiction unreasonable," and its second and fourth (to the extent it relates to Utah's interest) arguments are again premised on Alert's minimization of the actions it is accused of taking in Utah.

It is disingenuous for Alert to argue that it "lacks any reasonable expectation and foresseability of having to litigate in Utah" after it allegedly targeted one of Vivint's Utah-based employees and enticed him to access Vivint's Utah-based servers to steal information. Alert reached into Utah from Hawaii in order to commit a tortious act and should not, therefore, be surprised if it is called into Utah to answer for its actions. And it is for that reason that Utah has a substantial interest in having this case litigated within its boundaries. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004) ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-staters.").

8

Thus, only Alert's first argument, that litigating in Utah would be unduly burdensome to it, weighs in its favor. As Vivint concedes, it is common for this factor to weigh in favor of an out-of-state defendant. However, the burden that Alert faces does not "render jurisdiction unreasonable." On facts that are remarkably similar to those presented here, Judge Kimball determined that exercising jurisdiction over an out-of-state defendant who had accessed Vivint's database in order to obtain trade secret information that he used to solicit customers, "would not offend traditional notions of fair play and substantial justice" because "[a]lthough [the defendant] would likely experience some financial hardships and inconvenience by litigating this action in Utah, Utah has a strong interest in adjudicating the dispute because Utah is home to Vivint, the victim of [defendant's] alleged intentional tortious acts [and] to Vivint's database housing the confidential information . . . ." *Vivint, Inc. v. Bailie*, 2017 WL 396655, at *4 (D. Utah Jan. 30, 2017). While litigating in Utah may be more expensive and less convenient for Alert, Alert has failed to show that the weight of the five factors make the court's exercise of jurisdiction over it unreasonable.

## II. Venue is proper in the District of Utah.

Alert next argues that Vivint's complaint should be dismissed because the District of Utah is not the proper venue in which to bring this action. Vivint argues that venue is proper before this court under 28 USC § 1391(b)(2) because the trade secrets at issue "were created, maintained, located and stolen in Utah" and because "a substantial part of the events giving rise to Vivint's claims," namely the theft of the trade secrets, "occurred in Utah." Alert responds that the misappropriation actually occurred in Hawaii and that the contacts and business relations that were allegedly interfered with were exclusively in Hawaii.

The Tenth Circuit has recognized that "venue is not limited to the district with the *most* substantial events or omissions" but can instead be appropriate in a district "'as long as a

substantial part of the underlying events took place [there].'" *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165–66 (10th Cir. 2010) (emphasis in original) (citations omitted). The alleged theft of Vivint's trade secrets are the basis of this action, as without that theft, none of the other alleged actions, nor Vivint's claims, would have arisen. That theft was committed in Utah by the employee of a Utah-based company from a Utah-based server. Thus, because the theft both occurred in Utah and constitutes a "substantial part of the underlying events" of this action, venue is proper in the District of Utah.

### III. Alert has failed to establish that venue should be transferred.

Finally, Alert makes an alternative request that this case be transferred to the District of Hawaii. To succeed on this request Alert "bears the burden of establishing that the existing forum is inconvenient." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quotations and citations omitted). This is a high burden, as in order to disturb "the plaintiff's choice of forum," Alert must show that the balance of factors "is strongly in favor of [transferring]." *Id.* (quotations and citations omitted). Alert has failed to make such a showing here. Alert's motion simply makes it request in passing, failing to provide any support of argument for the same. And although Alert asserted at oral argument that a number of the witnesses to be called reside in Hawaii, such assertions alone are insufficient to convince the court that justice requires such a transfer. *See* 28 USC § 1404(a). Alert's request to transfer is denied.

## CONCLUSION

Alert's motion to dismiss is predicated on its attempts to distance itself from the alleged acts of Mr. Goldstein. But every relevant act that Mr. Goldstein took was allegedly done at the request, and enticing, of Alert. As such, and for the reasons more fully discussed above, Alert's Motion to Dismiss (ECF No. 6) is **DENIED**. The court also **DENIES** Alert's request to transfer venue to the District of Hawaii.

DATED this 30th day of October, 2019.

                          BY THE COURT:

                          _____
                          Clark Waddoups
                          United States District Judge